IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DIANEA JEAN PARSLOW,

                        Plaintiff,

         vs.                       Civil Action No.
                                      6:02-CV-1024 (TJM/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                       Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF: | |
| DIANEA JEAN PARSLOW<br>Scoharie, NY | |
| FOR DEFENDANT: | |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>Northern District of New York<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, NY 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant U.S. Attorney |
| OFFICE OF GENERAL COUNSEL<br>Social Security Administration<br>26 Federal Plaza<br>New York, NY 10278 | BARBARA L. SPIVAK, ESQ.<br>Chief Counsel, Region II<br><br>PAMELA BOORMAN, ESQ.<br>Assistant Regional Counsel |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Dianea Parslow, who suffers from a variety of physical conditions including a ventral hernia and morbid obesity, has commenced this action seeking judicial review, pursuant to section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), of an administrative determination denying her application for disability insurance benefits.  Before the agency, plaintiff argued that based upon her limitations, as recorded by her treating physician and described by her testimony, she is unable either to return to her past relevant work as a nurse or to perform any other gainful work.

Having reviewed the record without the benefit of a brief on behalf of the plaintiff, who is proceeding *pro se*, delineating the arguments in support of her judicial challenge of the Commissioner's decision, I find that the determination that the plaintiff is not disabled was based upon the application of proper legal standards, and is supported by substantial evidence.[1]

I.   BACKGROUND

_____

[1]      For an understanding of plaintiff's arguments I have looked to letters written in support of her two appeals to the Social Security Administration Appeals Council.  AT 4-8, 118-23.  Those communications outline various areas of her disagreement with the two decisions rendered by the agency.  *Id.*

Plaintiff was born on June 7, 1963; at the time of the most recent decision rendered by the administrative law judge ("ALJ") assigned to hear the matter, plaintiff was thirty-eight years of age. Administrative Transcript at pp. 33, 140.[2] Plaintiff is a high school graduate, and after two years of college education earned an associates degree in the field of early childhood. AT 33, 64. Plaintiff is unmarried, and has one son, who was born in October of 1997. AT 36-37. The plaintiff and her son live alone. AT 65. Plaintiff does not drive, and has never held a driver's license. AT 38, 65. The plaintiff is a licensed practical nurse, having worked in that field for several years before stopping in January of 1997, due to a high risk pregnancy; Ms. Parslow has not worked since that time. AT 33, 64, 70. At all relevant times, the plaintiff has been a regular cigarette smoker. AT 35, 66, 192.

Plaintiff suffers from several diagnosed medical conditions. At a height of five feet six inches and a weight of approximately 340 pounds, plaintiff is classified as morbidly obese.[3] AT 35, 61. Plaintiff has also

---

[2]     Portions of the administrative transcript (Dkt. No. 12) which was filed by the Commissioner with the agency's answer, will be cited as "AT ___." As will be seen, that administrative record includes transcripts of two hearings, and two resulting decisions rendered by the ALJ in connection with this matter.

[3]     In the past, morbid obesity was a listed impairment. Relatively recent regulatory amendments, however, have eliminated that condition as a listed

endured an inoperable ventral hernia, arthritis in hips, ankles, knees and shoulders; hypertension; and diarrhea.[4]  AT 33-34, 62-66.

Prior to the date of the first hearing, plaintiff's physical ailments were addressed by Dr. Theresa Viola, who plaintiff saw approximately every six months.  AT 44.  After the date of the first hearing, however, plaintiff stopped seeing Dr. Viola, based upon the distance between her home and the doctor's office, and has since consulted principally with Dr. Chester Burton, D.O., who began treating the plaintiff in January of 2001 and was seen by her approximately twelve times prior to the date of the second hearing, conducted on October 18, 2001.  AT 62, 70.  The plaintiff has also been examined consultatively by George Wootan, M.D., in July of 1999, for her ventral hernia, and Amelita Balagtas, M.D., in November of 1999, to assess complaints of knee pain.  AT 192-95, 207-09.

_____

impairment, instead requiring that it be considered as presenting nonexertional limitations which must be taken into account when determining a claimant's RFC. *Campbell v. Barnhart*, 178 F.Supp.2d 123, 132-33 (D. Conn. 2001); 64 Fed. Reg. 46,122 (Oct. 25, 1999); Titles II and IVI: Evaluation of Obesity, SSR 00-3p, 2000 WL 33952015 (S.S.A. May 15, 2000), *superseded by* SSR 02-01p, 2000 WL 628049 (S.S.A. Sept. 12, 2002).

[4]      Plaintiff attributes the inoperability surrounding her ventral hernia to the fact that she experiences adverse reaction to anesthesia.  AT 62.  In her office notes, however, Dr. Viola states that the plaintiff requires "significant . . . weight loss prior to any surgical intervention."  AT 223.

Over time, the plaintiff has been prescribed a variety of medications to address her several ailments, including Desitin, Vioxx, Imodium, Zestril, Ramipril and Vicodin, and additionally takes Tylenol. AT 34, 43-44, 54, 73-74; *see also* AT 161. Plaintiff testified during the first hearing that she receives some relief for her diarrhea through the prescribed use of Imodium. AT 34-35. Plaintiff does not use any devices to assist her to ambulate. AT 74, 193.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits under Title II and Part A of Title XVIII of the Act on June 19, 1999, alleging a disability onset date of November 27, 1997. AT 140-42. That application was denied, both initially and on reconsideration. AT 78-84.

At plaintiff's request, a hearing was conducted on November 17, 2000 in connection with the denial of her application for benefits. *See* AT 30-56. At the conclusion of that hearing, at which plaintiff was represented by counsel, the assigned ALJ, Joseph F. Gibbons, issued a determination dated December 26, 2000, finding no disability. AT 109-15. That determination was later vacated, and the matter was remanded for

further consideration, by order issued on July 25, 2001 by the Social

Security Administration Appeals Council.  AT 125-26.

A supplemental hearing was held before ALJ Gibbons on October

18, 2001 to address the concerns articulated by the Appeals Council.  *See*

AT 57-75.  Plaintiff, who by this time had discharged her attorney, waived

her right to representation at that second hearing.  AT 59.

On January 8, 2002 ALJ Gibbons rendered a decision addressing

plaintiff's claims for disability benefits.  AT 20-26.  In his decision the ALJ

applied the now familiar five step test for disability, finding that plaintiff had

not engaged in substantial gainful activity since November 27, 1997.  AT

21.  Although ALJ Gibbons determined that plaintiff had established the

existence of medically determinable impairments of sufficient severity to

restrict her physical ability to perform basic work activities, he found that

those impairments did not, either individually or in combination, meet or

equal any of the listings set forth in the applicable regulations.  AT 21-22.

Proceeding to step four of the governing test, ALJ Gibbons found

that the plaintiff was unable to return to her past relevant work as a

licensed practical nurse.  AT 22-23.  Acknowledging the Commissioner's

burden at step five to show the existence of jobs, in sufficient numbers,

which the plaintiff is capable of performing, ALJ Gibbons concluded that the plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary activity and, applying the medical-vocational guidelines set forth in the governing regulations (the "grids"), 20 C.F.R. Pt. 404, Subpt. P. App.2, concluded that a finding of no disability was directed.  AT 24.

Plaintiff's request for review of the ALJ's determination by the Appeals Council was denied on June 17, 2002, thereby making ALJ's opinion a final decision of the agency.  AT 2-3.

B.    This Action

Plaintiff commenced this action on August 9, 2002.  Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing on March 3, 2003 of an answer, accompanied by a copy of the administrative transcript of the proceedings before the agency. Dkt. Nos. 11, 12.  With the filing of defendant's brief on January 22, 2004, Dkt. No. 14, and the passage of the deadline for plaintiff to submit her brief, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[5]

III.    DISCUSSION

    A.    Scope Of Review

    A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been

---

    [5]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.*

*NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone,* 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dept. of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then

-11-

the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it

-12-

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

      C.    Evidence In This Case

The ALJ's finding of no disability was predicated upon his finding

that despite her limiting conditions, the plaintiff retains the RFC to perform

a full range of sedentary work.[6]  This finding is supported by reports from

two separate state agency medical consultants.  On June 23, 1999 Dr.

Alan Auerbach completed an RFC form reflecting an assessment which is

entirely consistent with the minimal requirements of sedentary work

activity.  AT 196-203.  Another agency consultant, Dr. Donna M. White,

completed a similar form in February of 2000, also supportive of the ALJ's

---

[6]    By regulation, that term is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at
> a time and occasionally lifting or carrying articles like docket
> files, ledgers, and small tools.  Although a sedentary job is
> defined as one which involves sitting, a certain amount of
> walking and standing is often necessary in carrying out job
> duties.  Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

RFC finding.  AT 211-18.  Notably, Dr. White considered plaintiff's allegations of pain, which he found to be consistent with available objective medical findings, when arriving at an RFC determination.  AT 216.  These opinions of state agency of medical consultants can, under appropriate circumstances, provide substantial evidence for an ALJ's determination.  *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); 20 C.F.R. § 404.1527(e); Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180 (S.S.A. July 2, 1996).

The ALJ's determination is also supported by the opinions of two separate examining consultants.  Dr. George Wootan, who evaluated the plaintiff in July of 1999 with regard to her ventral hernia, found some limitation in her ability to lift and carry, but concluded that she should be able to engage in any activities requiring sitting, standing and walking.  AT 194.  A similar finding was made by Dr. Amelita Balagtas, who evaluated the plaintiff in November of 1999 based upon her arthritic pain complaints.

-14-

The only significant limitation perceived by Dr. Balagtas was in respect of plaintiff's ability to lift and to perform prolonged standing and walking.  AT 208.  These limitations, however, are not inconsistent with the ALJ's finding of sedentary work.

It is true that two of plaintiff's treating physicians have rendered opinions which, at least facially, appear to be somewhat inconsistent with the ALJ's determination.  Both Dr. Teresa Viola, who treated the plaintiff twice yearly over an extended period, and Dr. Chester Burton, who was engaged as plaintiff's treating physician in January of 2001, have rendered opinions reflecting limitations in plaintiff's abilities to walk, stand, sit, lift, and carry, among others.  *See*, *e.g.*, AT 219-20, 231.  Those opinions, to the extent that they are inconsistent with a finding of an RFC to perform a full range of sedentary work, were rejected by the ALJ based upon the lack of supporting clinical evidence, and in view of the slightly contrary opinions of the consultants.  ___

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[7]  *Veino,* 312 F.3d at 588;

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record.  *Veino*,

312 F.3d at 588.  Where conflicts arise in the form of contradictory

medical evidence, their resolution is properly entrusted to the

Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3

---

[7]    The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.  When we do not
> give the treating source's opinion controlling
> weight, we apply [various factors] in
> determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527,

416.927).

   When a treating physician's opinions are repudiated, the ALJ must

provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  Failure to apply the appropriate legal standards for

considering a treating physician's opinions is a proper basis for reversal

and remand, as is the failure to provide reasons for rejection of his or her

opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

   In response to criticisms from the Appeals Council in this regard, the

ALJ amplified upon the basis for his rejection of the opinions of Dr. Viola

as not well supported.[8]  I have reviewed carefully the reasoning outlined

by the ALJ, and find it to be consonant with the regulation and supported

by substantial evidence.  The clinical evidence in the record generated by

Dr. Viola is exceedingly sparse.  Included among the materials prepared

by her is a report of an office visit on October 6, 1999 when, while

accompanying her son to see Dr. Viola for a physical examination, plaintiff

complained of knee discomfort.   AT 204.  Dr. Viola discerned the

existence of swelling and tenderness, but no bulging or posterior

_____

   [8]      The contrary opinions of Dr. Burton post-date the ALJ's first
determination.

tenderness, and diagnosed plaintiff as suffering from arthritis of the right

knee with possible effusion.  AT 204.  An x-ray was ordered, and Celebrex

and Zestril were prescribed.[9]  AT 204.  Another office visit entry included

in the record pertains to an examination of the plaintiff conducted by Dr.

Viola on October 4, 2000.  AT 223.  In her records relating to that visit, Dr.

Viola notes that plaintiff suffers from hypertension, which she describes as

"stable at the current time"; a large ventral hernia; morbid obesity; arthritis;

and diarrhea.  AT 223-24.  Notably, Dr. Viola's notes of that encounter are

devoid of any objective medical findings, and are based principally upon

plaintiff's subjective description of her symptomology.

The reports of Dr. Burton, who became plaintiff's treating physician

in January of 2001, are no more enlightening.  *See* AT 231-32, 234.

Those reports similarly lack reference to any clinical or diagnostic findings,

and instead merely report prior diagnoses.[10]  *See* AT 231-32, 234.

---

[9]     That x-ray, which was performed on October 12, 1999, revealed no joint
effusion, fracture or dislocation, but possible osteochondritis dissecans of the lateral
femoral condyle.  AT 206.

[10]     Dr. Viola has stated her opinion that the plaintiff is unable to "perform any
substantial gainful employment."  *See*, *e.g.*, 222.  This statement, which essentially
opines on a matter reserved to the Commissioner, was properly discounted by the ALJ
in light of Dr. Viola's failure to provide any specifics regarding plaintiff's limitations and
clinical findings to support that statement.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d
Cir. 1999); 20 C.F.R. § 404.1527(e).

-18-

It appears from her arguments to the Appeals Council that plaintiff contends the ALJ's determination overlooks subjective testimony concerning her limitations.  A review of the ALJ's decision reveals at least some degree of potential ambiguity in this regard.  At one point the ALJ notes that "[e]ven if one were to consider the claimant's subjective complaints in a most favorable light, no reason is found why she would be unable to perform at least a sedentary level of work on a sustained basis." AT 24.  Later in that same paragraph, however, the ALJ states that "[t]he claimant's subjective complaints are considered somewhat overstated and not credible."  AT 24.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily

would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. & Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work. *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[11] *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4)

---

[11] In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dept. of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her various conditions.  The fact that she suffers from discomfort, however, does not automatically qualify her

as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

Having carefully reviewed the plaintiff's hearing testimony, I can find no testimony that it is strikingly inconsistent with the ALJ's conclusion that she is able to perform sedentary work.  Plaintiff's testimony reflects that she is able to care for her son, who at the time of the second hearing was four years of age; can care for her personal needs; and has the ability to perform such functions as housecleaning and cooking.  AT 67-69.  While plaintiff claims that she receives assistance in carrying out such functions as grocery shopping and doing laundry, this is necessitated by the lifting component of those activities, and therefore her testimony regarding those exceptions is not inconsistent with the finding of her ability to perform sedentary work.

In sum, I find that the ALJ's rejection of plaintiff's testimony concerning her limitations, to the extent that it may be construed to be somewhat inconsistent with the ability to perform sedentary work, is both properly explained and supported by substantial evidence.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Having reviewed the record in this case I find that the ALJ's

-22-

determination that plaintiff is capable of performing the full range of

sedentary work is supported by substantial evidence, and that any

contrary opinions of treating physicians, and plaintiff's testimony regarding

her limitations, were appropriately rejected and the basis for that rejection

was adequately explained in the ALJ's decision.  Given this RFC finding

and its application to the grids, the ALJ's determination of no disability

results from the application of proper legal standards and is supported by

substantial evidence.[12]

It is therefore hereby

RECOMMENDED that defendants' motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no

disability be AFFIRMED, and plaintiff's complaint in this action be

DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*,

---

[12]     Given the RFC finding made by the ALJ, application of the grids to plaintiff's circumstances is relatively uncontroversial.

984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.

Dated:      July 21, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\parslow.wpd

-24-